UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bureau of Consumer Financial Protection, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | |
| Fifth Third Bank, National Association, | ) ) ) | |
| Defendant. | ) | |

# COMPLAINT

The Bureau of Consumer Financial Protection (Bureau) files this Complaint against Fifth Third Bank, National Association (Fifth Third) and alleges as follows.

## Introduction

1. Fifth Third offers and provides to consumers an array of financial products and services.

2. For years, and continuing through at least 2016, Fifth Third used a "cross-sell" strategy to increase the total number of products and services it provided to existing customers.

3. To further this cross-sell strategy, and to increase the number of products and services it provided to existing customers, Fifth Third conditioned

employee-performance ratings and, in some instances, continued employment on whether managers and their subordinate employees met ambitious sales goals. Fifth Third also used an incentive-compensation program that rewarded managers and their subordinate employees for selling new products and services to existing customers.

4. Reasonable sales goals and performance incentives are not inherently harmful. But when such programs are not carefully and properly implemented and monitored, they may create incentives for employees to engage in misconduct in order to meet goals or earn additional compensation.

5. Despite knowing since at least 2008 that employees were opening unauthorized consumer-financial products and services, Fifth Third took insufficient steps to properly implement and monitor its program, detect and stop misconduct, and identify and remediate harmed consumers. Predictably, Fifth Third's employees, without consumers' knowledge or consent, opened deposit accounts in consumers' names; transferred funds from consumers' existing accounts to new, improperly opened accounts; issued credit cards; enrolled consumers in online-banking services; and opened lines of credit on consumers' accounts. In short, Fifth Third focused on its own financial interests to the detriment of consumers.

6. Fifth Third's conduct violated the Consumer Financial Protection Act of 2010 (CFPA), the Truth in Lending Act (TILA), the Truth in Savings Act (TISA), and their implementing regulations.

7. The Bureau brings this action to stop Fifth Third's unlawful conduct and to obtain redress for affected consumers and an appropriate penalty and other monetary relief.

8. The Bureau brings this action under §§ 1031, 1036(a)(1), 1054, and 1055 of the CFPA, 12 U.S.C. §§ 5531, 5536(a)(1), 5564, 5565; TILA, 15 U.S.C. § 1601 et seq., and its implementing regulation, Regulation Z, 12 C.F.R. part 1026; and TISA, 12 U.S.C. § 4301 et seq., and its implementing regulation, Regulation DD, 12 C.F.R. part 1030.

## Jurisdiction

9. This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1); presents a federal question, 28 U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

## Venue

10. Venue is proper in this district because Fifth Third is located, resides, or does business in this district. 12 U.S.C. § 5564(f).

## Parties

11. The Bureau is an independent agency of the United States created by the CFPA and charged with regulating the offering and providing of consumer-financial

3

products and services under "Federal consumer financial laws." 12 U.S.C. § 5491(a). The Bureau is authorized to initiate civil actions in federal district court, by its own attorneys, to address violations of "Federal consumer financial law." 12 U.S.C. § 5564(a)-(b).

12. Fifth Third operates, among other things, a branch-banking business that offers and provides an array of financial products and services primarily used by consumers for personal, family, or household purposes. Fifth Third is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(5), (6), (15)(A).

## Factual Background

13. Fifth Third has more than $150 billion in total assets and, through its branch-banking business, operates more than 1,100 full-service branches in Illinois, Florida, Georgia, Indiana, Kentucky, Michigan, North Carolina, Ohio, Tennessee, and West Virginia.

14. Among the products and services Fifth Third offers through its branch-banking business are checking accounts, savings accounts, credit cards, online banking, and lines of credit.

15. To increase sales of its products and services, from at least 2010 through at least 2016, Fifth Third imposed sales goals on bank employees and implemented an incentive-compensation program that financially rewarded employees for selling new products and services. Sales goals were often set at a level higher than the anticipated

4

sales for thousands of employees. Fifth Third used the achievement or non-achievement of sales goals as a key component in performance ratings. Low performance ratings could result in disciplinary action, including termination.

16. By 2010, at the latest, Fifth Third was aware that employees were opening products and services in consumers' names without those consumers' knowledge or consent in order to achieve sales goals or obtain incentive rewards.

17. Despite Fifth Third's knowledge of unauthorized consumer-financial products and services, Fifth Third failed to take adequate steps to detect and stop these acts or practices, and to identify, notify, and remediate harmed consumers.

## Deposit Accounts

18. Fifth Third imposed aggressive sales goals for its employees to open new deposit accounts, and its incentive-compensation program rewarded employees for opening new deposit accounts funded with a specified minimum balance within a defined period.

19. From at least 2010 through at least 2016, Fifth Third opened deposit accounts for existing Fifth Third customers without the customers' knowledge or consent.

20. Some of these unauthorized accounts were "funded" when a banker transferred funds to the unauthorized account from the same consumer's authorized account without the consumer's knowledge or consent. Often, once an unauthorized

account was "funded," such that it qualified under the sales-goal tracking or incentive program, the banker transferred the funds back to the consumer's authorized account, again without the consumer's knowledge or consent.

21. Opening deposit accounts without consumers' knowledge or consent and moving consumers' funds without their knowledge or consent exposed consumers to risks of harm, including that they would be unable to meet their financial obligations, would incur fees, or would experience negative effects on their consumer-reporting-agency information.

22. Fifth Third charged unjustified fees to many consumers who had deposit accounts opened without their knowledge or consent and whose funds were transferred from their existing accounts to their new, improperly opened accounts.

### Credit Cards

23. Fifth Third imposed aggressive sales goals for its employees to sell credit cards to consumers, and its incentive-compensation program rewarded employees for selling new credit cards.

24. From at least 2008 through at least 2016, Fifth Third issued credit cards to existing customers without their knowledge or consent.

25. By 2009, at the latest, Fifth Third noticed a spike in unauthorized credit cards being issued to consumers.

26. Despite recognizing the increasing number of unauthorized credit cards, Fifth Third continued to emphasize sales and to maintain credit-card sales goals and incentive compensation.

27. Issuing credit cards without consumers' knowledge or consent exposed consumers to risks of harm, including unjustified fees for the unauthorized credit cards and negative effects on their consumer-reporting-agency information. Fifth Third charged many of these consumers unjustified fees.

Enrollment in Online Banking

28. Fifth Third imposed aggressive sales goals for its employees to enroll consumers in its online-banking services, and its incentive-compensation program rewarded employees for enrolling consumers in those services.

29. From at least 2010 through at least 2016, Fifth Third enrolled consumers in online-banking services without their knowledge or consent.

30. Fifth Third's enrollment of consumers in online-banking services without their knowledge or consent exposed consumers to the risk of harm, including increased risk of data theft, money theft, and improper personal-data use.

Opening of Early Access

31. Early Access is a fee-based line of credit that allows Fifth Third's deposit-account holders to withdraw funds from their deposit accounts before the

funds have been deposited in the accounts. Fifth Third imposed aggressive sales goals for its employees to sell Early Access to consumers, and its incentive-compensation program rewarded employees for enrolling consumers in "fee-based products," including Early Access.

32. Fifth Third opened Early Access lines of credit on consumers' deposit accounts without their knowledge or consent. Fifth Third was aware of this by June 2010, when senior management was notified of an increase in the number of calls by employees to the internal whistleblower hotline regarding the unauthorized opening of Early Access lines of credit.

33. Fifth Third opened unauthorized Early Access lines of credit from at least 2010 through 2014, and Fifth Third retained unauthorized Early Access lines of credit even after it stopped offering new Early Access lines of credit.

34. Fifth Third's opening and retention of these unauthorized lines of credit risked harm to consumers, including to their consumer-reporting-agency information.

## Violations of Law

35. Fifth Third's conduct, described above, violated and, where uncorrected, continues to violate the CFPA, TILA, TISA, and their implementing regulations.

## The CFPA

36. The CFPA prohibits "unfair" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

37. The CFPA prohibits "abusive" acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is abusive if it materially interferes with a consumer's ability to understand a term or condition of a consumer-financial product or service. 12 U.S.C. § 5531(d)(1).

38. Additionally, an act or practice is abusive if it takes unreasonable advantage of a consumer's inability to protect his or her interests in selecting or using a consumer-financial product or service. 12 U.S.C. § 5531(d)(2)(B).

## Count I
### *Unauthorized Deposit Accounts*
### *(Unfairness, in Violation of the CFPA)*

39. The Bureau realleges and incorporates by reference paragraphs 1-38.

40. Fifth Third's acts or practices of opening deposit accounts without consumers' knowledge or consent are likely to cause substantial injury in the form of fees, penalties, and negative effects to consumer-reporting-agency information.

41. Fifth Third's acts or practices of transferring funds between consumers' accounts without their knowledge or consent are likely to cause substantial injury in

9

the form of fees, penalties, the inability to withdraw funds, and negative effects to consumer-reporting-agency information.

42. Because these acts or practices occur without consumers' knowledge, the injuries are not reasonably avoidable by consumers, and they are also not outweighed by countervailing benefits to consumers or to competition.

43. Therefore, Fifth Third engaged in unfair acts or practices that violate §§ 1031(c)(1) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

## Count II
### Unauthorized Credit Cards
### (Unfairness, in Violation of the CFPA)

44. The Bureau realleges and incorporates by reference paragraphs 1-38.

45. Fifth Third's acts or practices of issuing credit cards to consumers without their knowledge or consent is likely to result in fees to consumers that the consumers cannot reasonably avoid because they are not aware that the credit cards have been issued.

46. Fifth Third's acts or practices of issuing credit cards to consumers without their knowledge or consent is likely to result in harm to consumer-reporting-agency information that the consumers cannot reasonably avoid because they are not aware that the credit cards have been issued.

47. These injuries to consumers are not outweighed by countervailing benefits to consumers or to competition.

10

48. Therefore, Fifth Third engaged in unfair acts or practices that violate §§ 1031(c)(1) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(c)(1), 5536(a)(1)(B).

## Count III
### *Unauthorized Enrollment in Online Banking Services*
### *(Abusiveness, in Violation of the CFPA)*

49. The Bureau realleges and incorporates by reference paragraphs 1-38.

50. Fifth Third's acts or practices of enrolling consumers in online-banking services without their knowledge or consent materially interferes with consumers' ability to understand the terms and conditions of online banking.

51. Fifth Third's acts or practices of enrolling consumers in online-banking services without their knowledge or consent takes unreasonable advantage of the inability of consumers to protect their interests in selecting or using a consumer-financial product or service.

52. Therefore, Fifth Third engaged in abusive acts or practices that violate §§ 1031(d)(1), 1031(d)(2)(B), and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(d)(1), 5531(d)(2)(B), 5536(a)(1)(B).

### Count IV
### *Unauthorized Opening of Early Access*
### *(Abusiveness, in Violation of the CFPA)*

53. The Bureau realleges and incorporates by reference paragraphs 1-38.

54. Fifth Third's acts or practices of opening Early Access lines of credit on consumers' deposit accounts without their knowledge or consent materially interferes with consumers' ability to understand Early Access's terms and conditions.

55. Fifth Third's acts or practices of opening Early Access lines of credit on consumers' deposit accounts without their knowledge or consent takes unreasonable advantage of consumers' inability to protect their interests in selecting or using a consumer-financial product or service.

56. Therefore, Fifth Third engaged in abusive acts or practices that violate §§ 1031(d)(1), 1031(d)(2)(B), and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(d)(1), 5531(d)(2)(B), 5536(a)(1)(B).

### Count V
### *Unauthorized Credit Card Issuance*
### *(Violations of TILA and Regulation Z)*

57. The Bureau realleges and incorporates by reference paragraphs 1-38.

58. Under TILA, "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. Regulation Z requires that "regardless of the purpose for which a credit card is to be used, including business, commercial, or agricultural use, no credit card shall be issued to any person except in

response to an oral or written request or application for the card; or as a renewal of, or substitute for, an accepted credit card." 12 C.F.R. § 1026.12(a).

59. Fifth Third issued credit cards to consumers without their knowledge or consent and not in response to an oral or written request or application for the card.

60. Therefore, Fifth Third violated TILA and Regulation Z.

## Count VI
### *Unauthorized Deposit Accounts*
### *(Violations of TISA and Regulation DD)*

61. The Bureau realleges and incorporates by reference paragraphs 1-38.

62. TISA's purpose is "to require the clear and uniform disclosure of—(1) the rates of interest which are payable on deposit accounts by depository institutions; and (2) the fees that are assessable against deposit accounts, so that consumers can make a meaningful comparison between the competing claims of depository institutions with regard to deposit accounts." 12 U.S.C. § 4301(b). TISA further authorizes the Bureau to issue implementing regulations, including regulations to carry out these purposes. E.g., 12 U.S.C. § 4308(a).

63. TISA's implementing regulation, 12 C.F.R. § 1030.4 (Regulation DD), requires the disclosure of the annual percentage yield and interest rate, compounding and crediting information, balance information, fees, and more. 12 C.F.R. § 1030.4(b). Those disclosures must be made before account opening. 12 C.F.R. § 1030.4(a)(1)(i).

64. By opening deposit-accounts without consumer authorization and, in the process, failing to make the required disclosures to the affected consumers, Fifth Third violated TISA and Regulation DD.

## Count VII
### *Sales Practices Likely to Cause Unauthorized Accounts*
### *(Unfairness, in Violation of the CFPA)*

65. The Bureau realleges and incorporates by reference paragraphs 1-38.

66. Even after learning of unauthorized Fifth Third consumer-financial products and services by 2008, Fifth Third failed to change its sales practices to avoid consumer harm. Instead, Fifth Third continued to foster sales practices that were likely to cause unauthorized products and services.

67. Fifth Third imposed sales goals on all levels of branch employees as part of its efforts to cross-sell; set goals that thousands of its employees could not achieve; threatened employees with termination or other disciplinary action if they failed to meet their goals; established a system under which managers pressured subordinate employees to sell; failed to take steps to determine and address a root cause of unauthorized accounts, which was consistently said by employees to be intense sales-pressure; failed to close known loopholes in its collection of proof of consumer authorization, thereby making it easy for employees to open accounts without valid signature cards for deposit accounts or applications for credit products; and failed to

take reasonable steps to identify, notify, and remediate identifiable consumers victimized by unauthorized account-openings.

68. Fifth Third's sales practices were likely to cause substantial injury to consumers, including adverse effects on their consumer-reporting-agency information, the imposition of unjustified fees, the theft of funds or private information, and the inability to meet financial obligations. This substantial injury to consumers is a predictable consequence of Fifth Third's sales practices.

69. Because any unauthorized products or services and Fifth Third's conduct, including its failures to detect, notify, and remediate, occurred without consumers' knowledge, the substantial injury to consumers is not reasonably avoidable by consumers.

70. Further, the substantial injury to consumers is not outweighed by countervailing benefits to consumers or to competition.

71. Therefore, Fifth Third engaged in unfair acts or practices that violate §§ 1031(c) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§ 5531(c), 5536(a)(1)(B).

## Count VIII
### *Additional Violations of the CFPA*

72. The Bureau realleges and incorporates by reference paragraphs 1-38.

73. By violating TILA, Regulation Z, TISA, and Regulation DD, Fifth Third violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## Demand for Relief

The Bureau requests that the Court:

a. permanently enjoin Fifth Third from, without the consumer's consent: (1) opening any deposit account; (2) issuing any credit card; (3) enrolling the consumer in online-banking services; and (4) opening any line of credit;

b. order Fifth Third to take all reasonable steps to identify and notify consumers who may have had a consumer-financial product or service opened without their consent, and allow those consumers to have their products or services closed without fees or penalties;

c. order Fifth Third to correct harmful consumer-reporting-agency information, including but not limited to correction of any harmful trade lines on consumer-credit reports resulting from unauthorized consumer-financial accounts and services at Fifth Third;

d. order Fifth Third to pay damages, restitution, and other monetary relief to consumers;

e. order Fifth Third to pay disgorgement or compensation for unjust enrichment;

f. impose on Fifth Third a civil money penalty under 12 U.S.C. § 5565(c);

g. order Fifth Third to pay the costs incurred in connection with prosecuting this action, under 12 U.S.C. § 5565(b); and

h. award additional relief as the Court may determine to be just and proper.

Dated: March 9, 2020

Respectfully submitted,

Cara Petersen
*Principal Deputy Enforcement Director*
Jeffrey Paul Ehrlich
*Deputy Enforcement Director*
Kara K. Miller
*Assistant Litigation Deputy*


/s/ Michael G. Salemi
MICHAEL G. SALEMI, IL ARDC 6279741
Email: michael.salemi@cfpb.gov
BARRY REIFERSON, NY Reg. #24343893
Email: barry.reiferson@cfpb.gov
MEGHAN SHERMAN CATER, NY Reg. #4473120
Email: meghan.sherman@cfpb.gov
LANE C. POWELL, MI Bar #P79432
Email: lane.powell@cfpb.gov
LEANNE E. HARTMANN, CA Bar #264787
Email: leanne.hartmann@cfpb.gov

230 S. Dearborn Street
Suite 1590
Chicago, IL 60604

and

1700 G Street, NW
Washington, DC 20552
Telephone: (212) 328-7020
Facsimile: (202) 435-5477

Attorneys for the Bureau of Consumer Financial Protection